FILED
2023 Nov-15  AM 11:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| ROSEMARY THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  3:22-cv-00579-HNJ |
| | ) | |
| RK HOLDINGS, LLP, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rosemary Thompson brings this suit against Defendant RK Holdings, LLP (hereinafter "RK Holdings"), alleging negligence and wantonness in connection with a slip-and-fall incident on Rural King's outdoor premises in Muscle Shoals, Alabama.  (Doc. 17).  Thompson argues RK Holdings left metal poles in its outdoor gardening area without appropriate warning, causing Thompson to fall on her knee and suffer physical and emotional injury.  (*Id.*).  On May 25, 2023, RK Holdings filed a motion for summary judgment.  (Doc. 22).  In the Motion, RK Holdings claims the alleged dangerous condition was open and obvious as a matter of Alabama law, absolving RK Holdings of any duty to warn Thompson or remove the poles from the premises.  (*Id.*).

The court agrees.  Because Thompson admitted subjective knowledge of the metal poles and traversed them several times prior to her fall, her negligence and

wantonness claims fail as a matter of law.  Therefore, the court **GRANTS** Defendant's motion for summary judgment in full.

## SUMMARY JUDGMENT STANARD

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a). The

> party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

If the movant sustains its burden, the non-moving party demonstrates a genuine issue of material fact by producing evidence by which a reasonable fact-finder could return a verdict in its favor. *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (citation omitted).  The non-movant sustains this burden by demonstrating "that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993).  In the alternative, the non-movant may "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id.* at 1116-17; *see also Doe v Drummond Co.*, 782 F.3d 576, 603-

04 (11ᵗʰ Cir. 2015), *cert. denied*, 136 S. Ct. 1168 (2016).

The "court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (citations omitted). "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151 (citation omitted). "That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* (citation omitted).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. In addition, a movant may prevail on summary judgment by submitting evidence "*negating* [an] opponent's claim," that is, by

producing materials disproving an essential element of a non-movant's claim or defense. *Id.* at 323 (emphasis in original).

There exists no issue for trial unless the nonmoving party submits evidence sufficient to merit a jury verdict in its favor; if the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249. That is, the movant merits summary judgment if the governing law on the claims or defenses commands one reasonable conclusion, but the court should deny summary judgment if reasonable jurors could "differ as to the import of the evidence." *Id.* at 250.

Because the defendant bears the burden of proof on its defenses at trial, its status as the summary-judgment movant requires it to establish there is no genuine dispute of material fact as to all the elements of plaintiff's claim and, concomitantly, that it deserves judgment as a matter of law on the claims. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) ("The movant must show . . . on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party.").

## BACKGROUND

The court recounts the facts of the case in the light most favorable to Thompson, the nonmoving party.

On the late afternoon of April 14, 2020, Thompson and her husband stopped at the Rural King store in Muscle Shoals on their way home from Barton. (Doc. 24-1 at

11).  Defendant RK Holdings operates the Rural King store in question.  (Doc. 18 at 1).  Thompson and her husband entered the indoor portion of the store to purchase birdfeed.  (Doc. 24-1 at 11).  Thompson then instructed her husband to load the purchased bags into their truck while she browsed the outdoor garden section of the store.  (*Id.*).

Rural King's outdoor garden section situated on one side of its parking lot and consisted of wooden pallets, topped with potted plants, arranged in a semi-rectangular formation.  (Doc. 24-2; doc. 24-3 at 2-9).  An asphalt aisle separated the pallets on the perimeter of the rectangle from the pallets in the center.  (Doc. 24-2).  No employees manned the premises, nor did Rural King maintain a point-of-sale register in the section.  (*Id.*).

Carrying a purse on her right shoulder, Thompson entered the outdoor garden section to search for "a plant to go in [her] … bowl [at home]."  (Doc. 24-1 at 11; doc. 24-2 at 58:45-59:00).  Near the entrance, Thompson picked up a small potted plant.  (Doc. 24-1 at 12; doc. 24-2 at 59:00).  She then walked the perimeter of the section carrying the potted plant in her left hand and apparently shading her eyes with her right hand.  (*Id.* at 59:20-59:34).

Near the back of the section, Thompson craned her head down towards a cluster of poles lying on the pavement and stepped over them.  (*Id.* at 1:00:00-07).  A few moments later, Thompson craned her head down towards the same poles and stepped

over them two more times.  (*Id.* at 1:00:17-31).[1]  As Thompson walked back towards the entrance (doc. 24-2 at 1:00:46-57), she tripped over a pole and landed on her left knee (doc. 24-1 at 13-14; doc. 24-2 at 1:00:57-1:01:00).  On the surveillance footage, pallets and plants obscure the place where Thompson fell, and only her upper body remains visible.  (Doc. 24-2 at 1:00:57-1:01:00).  However, Thompson's deposition testimony reveals she "must have" tripped over a pole mounted on a base and "elevated from the pavement."  (Doc. 24-1 at 13; doc. 24-3 at 5).

During her deposition, Thompson responded as follows regarding her awareness of the poles:

> Q. … So before you fell, did you notice rods on the ground?
> A. Yes. I stepped over rods all the way around my journey around that square, and that's why I'm thinking they're stacked up more [in the photograph exhibits] than when I was in there.
> …
> Q. … So you were—you were aware that there were rods in the parking lot near the area where you fell. You were aware of that before your fall?
> A. Yes.
> …
> Q. This may sound like a silly question, but why did you step over the rods?
> A. So I wouldn't fall.
> Q. So it would be fair to say before the fall you had an awareness that if you didn't step over a rod, you could fall?
> A. Yes.
> …
> Q. But you were—you were aware of—of those poles being there before your fall, correct?
> …
> A. Was I aware? Yes, I was aware the poles were there.

---

[1] These poles manifest visibly on the surveillance footage, but it remains unclear whether they lie flat on the pavement or instead hover slightly above the pavement.

(Doc. 24-1 at 13-14; 22-23).

Thompson remained on the ground for over 12 minutes until her husband located her.  (Doc. 24-2 at 1:12:45-1:13:30).  Thompson's husband exited the outdoor garden section, entered the store, and returned with a rolling cart.  (*Id.* at 1:15:20-1:16:55).  Moments later, two Rural King employees arrived on the scene (*id.* at 1:17:25-40), and one of them retrieved a wheelchair (*id.* at 1:17:50-1:20:25).  The employees lifted Thompson onto the wheelchair (doc. 24-1 at 14, 19, 22), and Thompson's husband wheeled her into the store (doc. 24-2 at 1:21:55-1:22:56).  Another employee assisted Thompson in filling out an incident report inside.  (Doc. 24-1 at 19).

On April 1, 2022, Thompson filed this action in the Circuit Court of Colbert County, Alabama, naming Rural King C Inc., Rural King Administration Inc., and fictitious parties as defendants.  (Doc. 1-1 at 3-9).  On May 4, 2022, named defendants Rural King C and Rural King Administration removed the case based on diversity jurisdiction.  (Doc. 1).  Shortly thereafter, Rural King C and Rural King Administration filed an answer and denied operating the Rural King store at issue.  (Doc. 3 at 6 ("Defendants deny that they owed a duty to Thompson as they were not the entity or entities responsible for the operation of the Rural King store located at 3401 Woodward Avenue, Muscle Shoals, Alabama 35661.")).  Accordingly, Thompson filed an unopposed motion to substitute RK Holdings for Rural King C and Rural King Administration.  (Doc. 15).  The court granted the motion (doc. 16), and Thompson

filed an Amended Complaint on July 22, 2022 (doc. 17).

Besides the party substitution, the Amended Complaint remained identical to the original Complaint.  In particular, Thompson claimed RK Holdings negligently and wantonly left metal poles on the premises of the store's outdoor gardening section without proper warning, causing Thompson to fall and suffer injury.  (Doc. 17).  The Amended Complaint also averred Thompson "did not see [the metal poles lying on the ground] prior to her fall."  (*Id.* at 2).

On July 27, 2022, RK Holdings filed its answer.  (Doc. 18).  Among other affirmative defenses, RK Holdings asserted the danger was open and obvious, Thompson was contributorily negligent, and Thompson assumed the risk of injury.  (*Id.*).

After a period of discovery, RK Holdings filed a motion for summary judgment, now pending before the court.  (Doc.  22).  In support of its motion, RK Holdings submitted surveillance footage from the day of the accident, Thompson's deposition testimony, and a series of pictures of the scene where the fall occurred.  (Doc. 24).  RK Holdings argued that Thompson's admitted awareness of the metal poles prior to her fall rendered the condition open and obvious as a matter of Alabama law.  (Doc. 23).  Because Thompson failed to file a timely response, RK Holdings filed another brief on June 29, 2023, re-averring its entitlement to summary judgment.  (Doc. 27).

On the same day, Thompson filed its Response to Motion for Summary Judgment.  (Doc. 28-1).  Thompson alleged the open and obvious nature of the

dangerous condition presented a question of fact for the jury, notwithstanding Thompson's admitted knowledge.  (*Id.* at 8 ("The fact that Mrs. Thompson knew the poles were there and had even traversed them several times does not mean that she or another similarly situated shopper would have realized the harm that would befall her trying to step over the stack of poles while exiting with her hands full at sunset in a makeshift maze of plants and trees.")).  In its reply, RK Holdings countered, "plaintiff has not cited a single case where plaintiff survived summary judgment despite having actual knowledge of the danger at issue."  (Doc. 29).

## DISCUSSION

Under Alabama law, a landowner's duty depends upon the status of the injured party as trespasser, licensee, or invitee.  *Tolbert v. Gulsby*, 333 So. 2d 129, 131 (Ala. 1976).  "In order to be considered an invitee, the plaintiff must have been on the premises for some purpose that materially or commercially benefited the owner or occupier of the premises."  *Ex Parte Mountain Top Indoor Flea Market, Inc.*, 699 So. 2d 158, 161 (Ala. 1997).  As an initial matter, Thompson qualifies as a business invitee because she entered Rural King for the purpose of purchasing birdfeed and garden supplies.  (Doc. 24-1 at 11).

"The owner of premises owes a duty to business invitees to use reasonable care and diligence to keep the premises in a safe condition, or, if the premises are in a dangerous condition, to give sufficient warning so that, by the use of ordinary care, the danger can be avoided."  *Armstrong v. Georgia Marble Co.,* 575 So. 2d 1051, 1053 (Ala.

1991).

However, the law does not couch this duty as absolute: a premises owner need not warn invitees of open and obvious conditions "which the invitee is aware of or should be aware of in the exercise of reasonable care on the invitee's part." *Tice v. Tice*, 361 So. 2d 1051, 1052 (Ala. 1978); *see also Sessions v. Nonnenmann,* 842 So. 2d 649, 652 (Ala. 2002) ("The entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries.  If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable.") (quoting *Breeden v. Hardy Corp.,* 562 So. 2d 159, 160 (Ala. 1990)).  To this end, courts may employ an objective test to discern "whether the danger should have been observed [by the plaintiff], not whether in fact it was consciously appreciated [by him or her]." *Jones Food Co. v. Shipman*, 981 So. 2d 355, 362 (Ala. 2006).

The open and obvious nature of a dangerous condition constitutes an affirmative defense, lodging the burden of proof upon the premises owner.  *See Barnwell v. CLP Corp.*, 235 So. 3d 238, 244 (Ala. 2017); *Dolgencorp, Inc. v. Taylor*, 28 So. 3d 737, 742 (Ala. 2009).  If the court establishes the existence of an open and obvious dangerous condition, no duty exists on the part of the premises owner.  Thus, the plaintiff's negligence or wantonness claim fails, obviating recourse to the contributory negligence and assumption of the risk affirmative defenses.  *See Sessions*, 842 So. 2d at 652 (declaring the "openness and obviousness of a hazard, if established, negate the … invitor's duty to eliminate the hazard or to warn the … invitee of the hazard; and this negation of

duty, in and of itself, defeats the [invitee]'s injury claim without the operation of any affirmative defense such as contributory negligence or assumption of risk."). [2]

Typically, whether a condition is open and obvious poses an issue of fact for the jury. *See Harvell v. Johnson*, 598 So. 2d 881, 883 (Ala. 1992) (declaring "[q]uestions of openness and obviousness of a defect or danger … are generally not to be resolved on a motion for summary judgment."); *Denmark v. Mercantile Stores Co.*, 844 So. 2d 1189, 1195 (Ala. 2002) ("Whether a condition is open and obvious is generally a question for the jury."); *Barnwell v. CLP Corp.*, 235 So. 3d 238, 244 (Ala. 2017) ("'[T]he question whether a danger is open and obvious is generally one of fact.'" (quoting *Howard v. Andy's Store for Men*, 757 So. 2d 1208, 1211 (Ala. Civ. App. 2000))); 1 Ala. Pers. Inj. & Torts § 4:14 (2023 ed.) ("Whether a condition is open and obvious is usually a jury question.").

In some circumstances, however, courts may deem a condition open and obvious as a matter of law "where reasonable minds could not differ regarding the obviousness of the danger." 1 Ala. Pers. Inj. & Torts § 4:14 (2023 ed.) (citing *McClurg v. Birmingham*

---

[2] Both negligence and wantonness claims require proof the defendant owed the plaintiff a duty. *See, e.g., Hobart Corp. v. Scoggins*, 776 So. 2d 56, 58 (Ala. 2000) (quoting *Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998) ("Wantonness involves the 'conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.'"); *Lilya v. Greater Gulf State Fair, Inc.*, 855 So. 2d 1049, 1056 (Ala. 2003) ("Without the existence of a duty, [plaintiff's] negligence and wantonness claims fail as a matter of law, and the trial court's summary judgment as to those claims was appropriate."). In the premises liability context, the open and obvious nature of a hazard negates the duty necessary to prevail on both negligence and wantonness claims. *See Dolgencorp, Inc. v. Taylor*, 28 So. 3d 737, 745 (Ala. 2009); *Foster v. Target Store, Inc.*, No. 7:14-cv-01741-AKK, 2016 WL 3055017, at *5 (N.D. Ala. May 31, 2016).

*Realty Company*, 300 So. 3d 1115, 1119 (Ala. 2020)).  The Alabama Supreme Court in

*McClurg* identified three such scenarios where summary judgment may be appropriate:

> (1) cases in which the plaintiff has admitted carelessness or subjective
> knowledge of the condition, *see, e.g., Browder v. Food Giant, Inc.*, 854 So. 2d
> 594, 596 (Ala. Civ. App. 2002) (finding open and obvious danger in
> grocery store parking lot where plaintiff admitted that she was not paying
> attention as she walked); (2) cases in which the type of condition was so
> obviously dangerous as to preclude liability under any circumstances, *see,
> e.g., Ex parte Industrial Distribution Servs. Warehouse, Inc.*, 709 So. 2d 16, 19
> (Ala. 1997) ("Total darkness, possibly concealing an unseen and unknown
> hazard, presents an open and obvious danger to someone proceeding
> through unfamiliar surroundings, as a matter of law."); and (3) cases in
> which, under the particular circumstances, no reasonable jury could find
> that the danger was not open and obvious, *see, e.g., Jones Food Co. v. Shipman*,
> 981 So. 2d 355, 363 (Ala. 2006) (holding that "a ladder leaned against the
> facade of [a] restaurant at a 45° angle to the ground," was an open and
> obvious danger under the circumstances).

300 So. 3d at 1119.

Regarding the first exception, Alabama courts and federal courts applying

Alabama law routinely grant summary judgment to a defendant where a plaintiff clearly

possesses subjective knowledge of a dangerous condition.  Most recently, in *Daniels v.

Wiley* the Alabama Supreme Court concluded that accumulated mud on a sidewalk

presented an open and obvious danger as a matter of law because the plaintiff "admitted

that she appreciated the danger created by the mud when she testified that she typically

avoided the danger by hopping over the mud." *Daniels v. Wiley*, 314 So. 3d 1213, 1225

(Ala. 2020).

The court reached a similar conclusion in *Dolgencorp, Inc. v. Taylor*, finding that

plaintiff's subjective knowledge of cluttered boxes in a store's aisles precluded her

negligence claim:

> It seems evident that the presence of cases of merchandise … in the aisles of the store presents an open and obvious hazard of a fall. No evidence was presented indicating that the cases of merchandise were in any way obscured or hidden from view; rather, the evidence clearly established that the cases of merchandise had been placed in the aisles in plain view of anyone attempting to navigate the aisles …. The condition of the premises was open and obvious for all to see, and it is undisputed that [plaintiff] had noticed and maneuvered around several cases of merchandise in the aisles before her fall.

28 So. 3d at 744-45; *see also Ex parte Bennett,* 426 So. 2d 832, 835 (Ala. 1982) ("[Plaintiff's] own testimony … indicates that she was aware of the [car] stops prior to the accident, and that she was attempting to avoid them when she tripped over one while looking at the other."); *Owens v. National Sec. of Alabama, Inc.*, 454 So. 2d 1387, 1389 (Ala. 1984) ("The evidence is undisputed that [plaintiff] knew that he was entering a room which was not lighted …. Reasonable persons do not walk the length of a large, windowless, and unlighted building and not realize that the way is dark."); *Secrist v. Mark IV Constructors, Inc.*, 472 So. 2d 1015, 1020 (Ala. 1985) ("[T]he dangerous slope of the roof in question, and any concommitant [sic] need for safety belts while working thereon, was at the very least as well known to the plaintiff as it was to the general contractor. It certainly was not a danger unknown to the employee-invitee, for he was one of those who called it to the attention of his own employer's foreman."); *Duffy v. Bel Air Corp.*, 481 So. 2d 872, 874 (Ala. 1986) ("It is clear from [plaintiff's] deposition that she knew of the existence of the hazard [decorative gravel] prior to the accident."); *Newton v. Creative Dining Food Systems, Inc.*, 492 So. 2d 1011, 1013 (Ala. 1986) ("[I]t is clear from

the plaintiff's testimony that she knew of the existence of the hazard [cedar chips in landscaped area] prior to the time of the accident."); *Heath v. Sims Bros. Constr. Co.*, 529 So. 2d 994, 995-96 (Ala. 1988) ("[W]e conclude that the dangerous condition of the floor and the need for hole coverings was at least as well known to [plaintiff] as it was to [defendant] …. If, therefore, the holes constituted a dangerous condition, under the facts of this case it was an open and obvious danger that the plaintiff should have recognized, and that, by his own admission, he did recognize."); *Davis v. M.C. Dixon Lumber Co., Inc.*, 551 So. 2d 305, 307 (Ala. 1989) ("Because [plaintiff] knew or should have known of the danger of logs falling from trucks during the unloading process, [defendant] was under no duty to warn him of that danger."); *Grider v. Grider*, 555 So. 2d 104, 107 (Ala. 1989) ("Because of the open and obvious nature of the nails, and plaintiff's knowledge of the danger posed by nails, [defendant] was under no duty to warn the plaintiff of any danger associated with walking in the area and stepping on nails."); *Gable v. Shoney's, Inc.*, 663 So. 2d 928, 929 (Ala. 1995) ("[Plaintiffs] simply presented no evidence to establish that the bumper block was a hidden defect that [invitee] did not know of and would not discover in the exercise of ordinary care."); *Foster v. Target Stores*, No. 7:14-cv-01741-AKK, 2016 WL 3055017, at *4 ("Indeed, the facts establish that the light grey wheel stops contrasted with the black pavement in the parking lot and that Foster had visited the … store many times before, regularly parked in the handicapped parking spaces, and knew the wheel stops existed."); *Couch v. Von Maur Stores, Inc.*, No. 2:20-cv-00442-MHH, 2021 WL 4301587, at *2-3 (N.D. Ala. Sept.

21, 2021) ("[Plaintiff] testified that she was familiar with T-Stands and had seen them before at other stores.  She walked the area containing the T-Stands—including the particular walkway where she fell—for almost two hours.  And even though garments hung from the T-Stand that caused her fall, [plaintiff] could see the wheel.") (internal citations omitted).[3]

Conversely, courts deny summary judgment where a question of fact remains as to whether a plaintiff possessed subjective knowledge of a dangerous condition.  *See, e.g., Bush v. Alabama Power Co.*, 454 So. 2d 1387 (Ala. 1984) ("It is undisputed that the wires run directly over the tennis courts and that the view of them is not obstructed in any way from the level of the tennis court. However, … [t]here is evidence that although the wires were in clear view, they were not 'seen,' and the fact that they were energized and uninsulated was not obvious."); *Banks v. Bayou Bend II, Ltd.*, 552 So. 2d 1070, 1071-72 (Ala. 1989) (Given conflicting evidence regarding plaintiff's knowledge, "whether the [rotten] beam was a hidden danger or presented an open and obvious condition, the danger of which could be appreciated, is a question of fact properly within the province of the jury."); *Williams v. Newton*, 526 So. 2d 18, 20 (Ala. 1988) ("[Plaintiff's] testimony can be reasonably interpreted as simply an acknowledgement 'after the fact'

---

[3] In such cases, the plaintiff need not actually *appreciate the danger* at the time of the accident, though such evidence may be relevant to the open and obvious inquiry.  *See Sessions v. Nonnenmann,* 842 So. 2d 649, 653 (Ala. 2002) ("[I]n order for a defendant-invitor in a premises-liability case to win a summary judgment or a judgment as a matter of law grounded on the absence of a *duty* on the invitor to eliminate open and obvious hazards or to warn the invitee about them, the record need not contain undisputed evidence that the plaintiff-invitee consciously appreciated the danger at the moment of the mishap.").

that she had walked over the ice as she entered [defendant's] office and that she had been lucky in not falling at that time. [Plaintiff's] deposition testimony does not affirmatively show that she was aware of the ice as she entered [defendant's] office; therefore, a question of fact remains as to whether [plaintiff] actually knew about the ice prior to her fall.").

The Alabama Supreme Court has only applied *McClurg*'s second exception— open and obvious dangerous conditions *per se*—in the context of total darkness. *See Industrial Distribution*, 709 So. 2d at 19 ("Total darkness … presents an open and obvious danger to someone proceeding through unfamiliar surroundings, as a matter of law."). It has also suggested that an open body of water may constitute a *per se* open and obvious danger. *Owens v. National Sec. of Alabama, Inc.*, 454 So. 2d 1387, 1389-90 (Ala. 1984).

Regarding the third *McClurg* exception, courts may grant summary judgment to a defendant where "the evidence has established that the danger was so extraordinarily obvious that plaintiffs could not conceivably prevail on their premises-liability claims." *McClurg*, 300 So. 3d at 1120. *See Ex parte Neese*, 819 So. 2d 584, 590 (Ala. 2001) ("[An] upside-down doormat, lying out in the rain, constituted an open and obvious danger on [defendant's] property, which [plaintiff], in the exercise of reasonable care, should have recognized, as a matter of law."); *Jones Food Co.*, So. 2d at 363 ("[A] reasonable person should have perceived the risk that a ladder leaned against the facade of the restaurant at a 45° angle to the ground could shift at the bottom under the user's weight

if the footing of the ladder was not secured."); *Sessions v. Nonnenmann*, 842 So. 2d at 654 ("[T]he undisputed evidence that the hazard of the open stairwell was open and obvious negates any general duty in the defendant general contractor to barricade the stairwell or to warn the subcontractor plaintiff of the hazard."); *Quillen v. Quillen*, 388 So. 2d 985, 989 (Ala. 1980) ("We are of the opinion that an aluminum ladder leaning against a metal gutter constituted an open and obvious danger on the defendant's property which the plaintiff, in the exercise of reasonable care, should have recognized.").

A plaintiff's subjective knowledge of a danger and/or the patent obviousness of a danger negates a premises owner's duty even if the owner anticipated or should have anticipated that harm would befall the plaintiff.  In this manner, Alabama law contrasts with the Second Restatement, which provides "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness*."  Restatement (Second) of Torts § 343A (1965) (emphasis added).  *See Daniels*, 314 So. 3d at 1224 ("This Court has expressly rejected the notion that an invitor owes a duty to eliminate open and obvious hazards or to warn the invitee about them if the invitor 'should anticipate the harm despite such knowledge or obviousness.'") (quoting *Ex parte Gold Kist, Inc.,* 686 So. 2d 260, 261 (Ala. 1996)); *id.* at

1225 (overruling "cases siting, quoting, and/or applying the Restatement (Second) of Torts § 343A).[4]

Thompson's negligence and wantonness claims fail because Thompson possessed subjective knowledge of the metal poles on Rural King's premises. Even drawing reasonable inferences in favor of the nonmoving party, the record conclusively proves Thompson possessed subjective knowledge of the dangerous condition at issue. Because RK Holdings owed no duty to Thompson to issue a warning or remove the poles from the premises, Thompson's claims fail as a matter of law.

---

[4] That said, in narrow circumstances, Alabama courts recognize that on-premises distractions may negate the otherwise open and obvious nature of a dangerous condition. *See* 1 Ala. Pers. Inj. & Torts § 4:10 (2023 ed.) ("It is common knowledge that one can miss or overlook an otherwise clear and observable danger or defect when he or she is distracted.... While the Alabama Supreme Court rejected the Restatement Second, Torts § 343A approach to the extent that it would impose a duty on a landowner to eliminate open and obvious dangers or to warn an invitee of such dangers if the invitor should anticipate the harm, distractions might make a dangerous condition not open and obvious.") (internal quotation marks omitted). For example, in *Bogue v. R & M Grocery*, 553 So. 2d 545, 545 (Ala. 1989), a patron entered a grocery store as an invitee, proceeded out the door over a sloping concrete structure (in the same manner as she entered), and fell into the parking lot. In denying summary judgment, the court cited evidence that "the design of the store is such that patrons exiting [the grocery store] must direct their attention to traffic which may be entering or exiting the gasoline pump area." *Id.* at 546 (internal quotation marks omitted). *See also McClurg*, 300 So. 3d at 1119-20 ("A reasonable jury could conclude that people exercising reasonable care while walking in a parking lot are normally watching for other hazards, such as cars, other pedestrians, and stray shopping carts, and may not necessarily notice a pothole in the asphalt."); *Pittman v. Hangout in Gulf Shores*, LLC, 293 So. 3d 937, 944 (Ala. Civ. App. 2019) (summary judgment inappropriate where plaintiff presented evidence that the premises were crowded and used high-top tables in a section with lower elevation).

Furthermore, courts may deny summary judgment to a premises owner where the dangerous condition at issue was deceptive in appearance. 1 Ala. Pers. Inj. & Torts § 4:9 (2023 ed.). For example, "[t]he variable factors which make open-and-obviousness under partial or poor light conditions a fact question not appropriate for resolution by summary judgment are direction, level, color, diffusion, shadows, and like qualities of light, as well as other physical features of the scene." *Harley v. Bruno's Supermarkets, Inc.*, 888 So. 2d 525, 527 (Ala. Civ. App. 2004); *see also Woodward v. Health Care Authority of City of Huntsville*, 727 So. 2d 814, 816 (Ala. Civ. App. 1998) (summary judgment denied where "[plaintiff] testified in her deposition that as she exited the hospital's parking garage she encountered a bright light" that "caused the walkway where she fell to look like one massive area of cement.").

The Background depicted the following deposition evidence as to Thompson's knowledge of the poles on the pavement at Rural King:

> Q. … So before you fell, did you notice rods on the ground?
> A. Yes. I stepped over rods all the way around my journey around that square, and that's why I'm thinking they're stacked up more [in the photograph exhibits] than when I was in there.
> …
> Q. … So you were—you were aware that there were rods in the parking lot near the area where you fell. You were aware of that before your fall?
> A. Yes.
> …
> Q. This may sound like a silly question, but why did you step over the rods?
> A. So I wouldn't fall.
> Q. So it would be fair to say before the fall you had an awareness that if you didn't step over a rod, you could fall?
> A. Yes.
> …
> Q. But you were—you were aware of—of those poles being there before your fall, correct?
> …
> A. Was I aware? Yes, I was aware the poles were there.

(Doc. 24-1 at 13-14; 22-23).

The deposition testimony above clearly establishes Thompson possessed subjective knowledge of the metal poles lying on the pavement.  (*Id.* at 13).  The surveillance footage appears to corroborate the same—as Thompson browsed the outdoor garden section, she craned her head down towards a cluster of poles and stepped over them three separate times.  (Doc. 24-2 at 1:00:00-31).[5]

---

[5] The surveillance footage does not clearly depict whether the poles that Thompson successfully stepped over were completely flush with the pavement or slightly elevated. Thompson represented in her deposition that defense counsel's photographs of the scene did not accurately represent the

On the surveillance footage, potted plants and pallets obscure the exact source of Thompson's fall.   However, Thompson's deposition testimony suggests that Thompson tripped over a pole elevated from the pavement:

> Q. Okay. Well, let's talk about those rods. Okay. So I know you talked about some white or silver rods?
> A. Yes.
> Q. And we see in these pictures I've marked as Defendant's Exhibit 1 some rods laying on the ground. Are those the rods you're talking about?
> A. Yes.
> Q. And it looks like some of them are laying [sic] on the ground, and then there's one that's—is it—it kind of looks like it's mounted in the ground. Do you see where I'm talking about?
> A. I do.
> Q. The one that's mounted in the ground is actually a little bit elevated from the payment?
> A. I see, yes.
> Q. Is—is that where you fell?
> A. It must -- it had to be where I fell, yes.

(Doc. 24-1 at 13).

Thompson does not contend the elevated pole over which she tripped is categorically different from the poles lying directly on the pavement.   In fact, Thompson's response to RK Holdings's motion for summary judgment refers generically to "the poles" without any further distinction.[6]  (*See, e.g.,* doc. 28-1 at 8).

---

condition of the poles at the time of her fall.  (*See* Doc. 24-1 at 13 ("I think it looks a little more cleaned up than when I was in there, because I remember stepping over quite a few little rods…. I stepped over rods all the way around my journey around that square, and that's why I'm thinking they're stacked up more [in the photographs] than when I was in there."")).  In addition, Defendant's photograph exhibits do not fully show the back portion of the outdoor garden section where Thompson stepped over the poles.  (Doc. 24-3 at 2-9).  None of these observations mar the conclusion reached herein.

[6] Thompson similarly refers generically to "the poles" in her deposition.  (Doc. 24-1 at 22-23).

Indeed, there ensues no need to distinguish elevated poles and poles sitting on the pavement—as interchangeable conditions, customers must step over both types of poles to avoid injury.   Moreover, this court may infer the plaintiff's subjective knowledge of the *actual* hazard due to her expressly admitted knowledge of a *closely related* hazard.   *See Dolgencorp*, 28 So. 3d at 743 ("[Plaintiff], by her own admission, had maneuvered around other cases of merchandise on the floor of the store before falling over the two cases located on the back aisle [of which the plaintiff did not see]").   Indeed, if the photographs appended by RK Holdings to its summary judgment motion accurately portray the conditions at the time Thompson fell, she stepped over another portion of the elevated pole closer to the back of the outdoor section.   *See* Doc. 24-3.

Like the plaintiffs in *Daniels*, *Dolgencorp*, *Foster*, and *Couch*, Thompson observed the dangerous condition and navigated it successfully prior to her fall.   In *Daniels*, the plaintiff testified he "typically" stepped over the mud that accumulated on the sidewalk of his apartment complex.   314 So. 3d at 1225.   In *Dolgencorp*, the defendant presented evidence the plaintiff "shopped at the store approximately once every two weeks during the two- to three-year period preceding the accident" and talked to a cashier about the store's cluttered condition.   28 So. 3d at 742-43.   Likewise, in *Foster* the premises owner submitted evidence the plaintiff "visited the … store many times before, regularly parked in the handicapped parking spaces, and knew the wheel stops existed."   2016 WL 3055017 at *4.   Finally, the court in *Couch* noted the plaintiff observed similar T-stands at other stores and "walked the area containing the T-Stands—including the

particular walkway where she fell—for almost two hours." 2021 WL 4301587 at *2-3. Likewise, Thompson tripped over a metal pole despite her awareness "the poles were there." (Doc. 24-1 at 23).

To be sure, Thompson testified she visited Rural King's outdoor garden section only "[o]nce or twice before." (Doc. 24-1 at 11). Thompson did not recall seeing metal poles or an erected tent canopy on any prior occasion. (*Id.* at 22).[7] However, that Thompson's presence in the outdoor garden section lasted only a matter of minutes does not materially matter, as Alabama's subjective knowledge standard does not appear to give weight to the duration of the plaintiff's knowledge.

Because Thompson's knowledge negates RK Holdings's duty of care, Thompson's negligence and wantonness claims fail as a matter of law. As a result, this court need not litigate RK Holdings's contributory negligence and assumption of the risk defenses.

## CONCLUSION

As previously mentioned, "[q]uestions of openness and obviousness of a defect or danger … are generally not to be resolved on a motion for summary judgment." *Harvell v. Johnson*, 598 So. 2d 881, 883 (Ala. 1992). This is not such a case, because

---

[7] Thompson gave the following testimony:

Q.  Have you ever seen a canopy up in that plant area?
A.  If I have, I haven't noticed it. I've only been there once or twice, so.

(Doc. 24-1 at 22).

Thompson possessed subjective knowledge of the hazard posed by the metal poles. Because RK Holdings does not owe Thompson a duty of care, Thompson's negligence and wantonness claims may not proceed. Accordingly, the court **GRANTS** Defendant's motion for summary judgment.

   **DONE** and **ORDERED** this 15th day of November, 2023.

                _____
                HERMAN N. JOHNSON, JR.
                UNITED STATES MAGISTRATE JUDGE